**WO**                                                                                                       JDN

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Eli A. Flores, | No. CV 05-2387-PHX-JAT (LOA) |
| Plaintiff, | **ORDER** |
| vs. | |
| Joseph Arpaio, | |
| Defendant. | |

Plaintiff Eli A. Flores filed this civil rights action pursuant to 42 U.S.C. § 1983 against Joseph Arpaio, the Maricopa County Sheriff (Doc. #4). Before the Court is Defendant's Motion for Summary Judgment (Doc. #27). Plaintiff did not respond.

The Court will grant summary judgment in favor of Defendant and dismiss the action.

**I.   Background**

In his First Amended Complaint, Plaintiff alleged that his constitutional rights were violated by the conditions at the Maricopa County Madison and Towers Jails (Doc. #4 at 1).[1] In Count I, Plaintiff claimed that he was served just two meals a day and the food was inadequate (id. at 4). In Count II, he alleged that the jail was severely overcrowded (id. at 5). And in Count III, Plaintiff alleged that the conditions were unsanitary (id. at 6). The Court screened the First Amended Complaint and ordered service on Arpaio (Doc. #9).

---

[1] Plaintiff has since been transferred to the custody of the Arizona Department of Corrections and is housed at the Arizona State Prison Complex in Buckeye, Arizona (Doc. #8).

Defendant did not file an answer, so Plaintiff moved for a default judgment (Doc. #14). Defendant then submitted a Motion to Dismiss for failure to exhaust available administrative remedies (Doc. #15) and filed his Answer (Doc. #16). The Court denied both Plaintiff's motion for default and Defendant's motion to dismiss (Doc. ##21, 24). The Court found that Defendant waived the affirmative defense of nonexhaustion because he failed to timely raise it (Doc. #24).

Defendant now moves for summary judgment on the grounds that (1) the conditions at the jail were not unconstitutional and (2) Defendant was not deliberately indifferent (Doc. #27). The Court issued an Order informing Plaintiff of his obligation to respond to the summary judgment motion (Doc. #29).[2] Plaintiff did not file a response, and the time for responding has expired.

## II.    Legal Standard

### A.    Summary Judgment

A court must grant summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). Under summary judgment practice, the moving party bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, that it believes demonstrate the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323; Devereaux v. Abbey, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc).

If the moving party meets its burden with a properly supported motion, the burden then shifts to the opposing party to present specific facts that show there is a genuine issue for trial. Fed. R. Civ. P. 56(e); Auvil v. CBS "60 Minutes", 67 F.3d 816, 819 (9th Cir. 1995); see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Conclusory allegations, unsupported by factual material, are insufficient to defeat a motion for summary judgment.

---

[2]Notice required under Rand v. Rowland, 154 F.3d 952, 962 (9th Cir. 1998).

1 Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).  Instead, the opposing party must, by
2 affidavit or as otherwise provided by Rule 56, designate specific facts that show there is a
3 genuine issue for trial.  Anderson, 477 U.S. at 249; Devereaux, 263 F.3d at 1076.  Rule 56(c)
4 mandates the entry of summary judgment against a party who, after adequate time for
5 discovery, fails to make a showing sufficient to establish the existence of an element essential
6 to that party's case and on which the party will bear the burden of proof at trial.  Celotex, 477
7 U.S. at 322-23.

8       In assessing whether a party has met its burden, the court views the evidence in the
9 light most favorable to the non-moving party.  Allen v. City of Los Angeles, 66 F.3d 1052,
10 1056 (9th Cir. 1995).  All reasonable inferences are drawn in favor of the nonmovant.
11 Gibson v. County of Washoe, 290 F.3d 1175, 1180 (9th Cir. 2002).

12       **B.**    **Pretrial Detainee**

13       Claims by pretrial detainees are analyzed under the Fourteenth Amendment Due
14 Process Clause, which protects against the use of excessive force that amounts to
15 punishment.  Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998); Redman v. County of San
16 Diego, 942 F.2d 1435, 1440 (9th Cir. 1991).  For a particular governmental action to
17 constitute punishment, the action must cause the detainee to suffer some harm or disability,
18 and the purpose of the action must be to punish the detainee.  Demery v. Arpaio, 378 F.3d
19 1020, 1029 (9th Cir. 2004) (citing Bell v. Wolfish, 441 U.S. 520, 538 (1979)).  The harm or
20 disability caused by the government's action must either significantly exceed or be
21 independent of the inherent discomforts of confinement.  Demery, 378 F.3d at 1030 (citing
22 Bell, 441 U.S. at 537).  And if a condition or governmental action is not reasonably related
23 to a legitimate governmental objective—"if it is arbitrary or purposeless"—a court may infer
24 that the purpose of the governmental action is punishment.  Bell, 441 U.S. at 539.

25       Because pretrial detainees' rights under the Fourteenth Amendment are comparable
26 to prisoners' rights under the Eighth Amendment, the same standards are applied.  Frost, 152
27 F.3d at 1128.  The Eighth Amendment imposes a duty upon prison officials to provide
28 humane conditions of confinement.  Farmer v. Brennan, 511 U.S. 825, 832 (1994).  Only

1  deprivations denying the minimal civilized measure of life's necessities are sufficiently grave
2  for a constitutional violation. Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2000) (citation
3  omitted). These are "deprivations of essential food, medical care, or sanitation" or "other
4  conditions intolerable for prison confinement." Rhodes v. Chapman, 452 U.S. 337, 348
5  (1981). In determining whether a violation has occurred, a court should consider the
6  circumstances, nature, and duration of a deprivation of these necessities. Johnson, 217 F.3d
7  at 731.

8        To state a § 1983 claim that jail conditions violated his Eighth Amendment rights, a
9  plaintiff must show that the defendant acted with deliberate indifference. Wilson v. Seiter,
10 501 U.S. 294 (1991). Officials are deliberately indifferent if they both know of and disregard
11 an excessive risk to inmate health; the official must both be aware of facts from which the
12 inference could be drawn that a substantial risk of serious harm exists and he must also draw
13 the inference. Farmer, 511 U.S. at 837. Requiring conduct that amounts to deliberate
14 indifference "provides an appropriate balance of the pretrial detainees' right to not be
15 punished with the deference given to prison officials to manage the prisons." Redman, 942
16 F.2d at 1443.

17 **III.    Analysis**

18       **A.    Inadequate Meals**

19       The Eighth Amendment requires that prisoners be served food that is adequate to
20 maintain health. There is no requirement that the food be tasty or aesthetically pleasing.
21 LeMaire v. Maass, 12 F.3d 1444, 1456 (9th Cir. 1993). Food that is served cold or that
22 sometimes contains foreign objects satisfies the Constitution. Id. (citations omitted).

23       In his verified First Amended Complaint, Plaintiff asserts that he was served just two
24 meals a day, more than 10 hours apart, and that half the food served was expired (Doc. #4
25 at 4).

26       Defendant does not dispute that meals were served only twice per day, but he argues
27 that the two meals were nutritional and met all federal government guidelines (Doc. #27 at
28 6, 8). Defendant submits the affidavit of Kundavaram Reddy, a registered dietician with the

1  Maricopa County Sheriff's Office (Doc. #28, Ex. A, Reddy Aff. ¶ 1). Reddy prepares the
2  monthly menus and annual menu analysis to track calories and nutritional content (id. ¶ 2).
3  Reddy attests that the "sell by date" on donated cookies, cakes, and candies may be exceeded
4  and those items are inspected by dietary staff to ensure that they are safe for consumption (id.
5  ¶ 9). In his deposition, Plaintiff acknowledged that the date stamped on the food could have
6  been the "sell by date," rather than an expiration date (id., Ex. B, Pl. Dep., Dec. 14, 2007,
7  11:19-23). Finally, Reddy confirms that during Plaintiff's confinement at the jail, Plaintiff
8  received meals that met all of the U.S. Recommended Dietary Reference guidelines,
9  including the recommended 2400-2500 calories per day (id., Ex. A, Reddy Aff. ¶¶ 5,15).[3]

10  Defendant's evidence demonstrates that meals at the jail are planned by a dietician
11 to meet national standards and that the food is inspected to ensure that it is safe to consume.
12 As stated, Plaintiff did not respond to this evidence. And the allegations in his First
13 Amended Complaint are insufficient to show that a material issue of fact exists regarding the
14 adequacy of the food.[4] Based on this record, there is no evidence that a material issue of fact
15 exists with respect to the claim in Count I. The Court will grant summary judgment in favor
16 of Defendant on this claim.

17  **B.     Overcrowding**

18  Overcrowding is not unconstitutional per se, but it can result in certain effects that
19 form the basis for a constitutional violation. Toussaint v. Yockey, 722 F.2d 1490, 1492 (9th

---

[3]Defendant adds that he "has declared it his intent to make incarceration a place where gourmet meals are not served, in hopes to help decrease recidivism," which he contends is an accepted penological goal (Doc. #27 at 7-8). Of course, a policy to decrease recidivism is *not* a penological goal of a jail housing pretrial detainees who have not been convicted of a crime and may not be punished prior to an adjudication of guilt. Demery, 378 F.3d at 1029. This misconceived argument, however, is unsupported by affidavit evidence and will not be considered. See British Airways Bd. v. Boeing Co., 585 F.2d 946, 952 (9th Cir. 1978) (legal memoranda is not evidence and cannot create an issue of material fact).

[4]A verified complaint may be used as an affidavit opposing summary judgment if it is based on personal knowledge and sets forth specific facts admissible in evidence. See Schroeder v. McDonald, 55 F.3d 454, 460 (9th Cir. 1995).

1  Cir. 1984); Hoptowit v. Ray, 682 F.2d 1237, 1249 (9th Cir. 1982).  These effects include
2  increased violence, the reduction of other constitutionally required services such that they
3  fall below Eighth Amendment standards, and the deterioration of shelter to the point that it
4  is unfit for human habitation.  Hoptowit, 682 F.2d at 1249; see also Akao v. Shimoda, 832
5  F.2d 119, 120 (9th Cir. 1987) (per curiam) (reversing district court's dismissal of claim that
6  overcrowding caused increased stress, tension, communicable disease, and confrontation
7  between inmates); Toussaint, 722 F.2d at 1492 (constitutional violation may occur as a result
8  of overcrowded prison conditions engendering violence, tension and psychiatric problems).
9       Plaintiff claims that he was forced to live in extremely overcrowded conditions.  He
10 states that the pod, which was designed for 32 people, held up to 100 inmates a day (Doc. #4
11 at 5).  He also alleges that inmates were housed 3 men to a cell (id.).
12      Defendant submits evidence that he was aware of the increasing jail population and
13 that to alleviate the crowding problem, the county began constructing two new jail facilities
14 in 1999 (Doc. #28, Ex. D., Karowski Aff. ¶ 11).  These jail facilities began housing inmates
15 in April 2005 (id. ¶ 12).  Defendant describes the county's ongoing plan to update and
16 construct new jail facilities into the future (Doc. #27 at 11-13).  Bill Karowski, Jail
17 Commander at the Towers Jail during Plaintiff's confinement, avers that crowding at the jail
18 was an incident of a legitimate governmental purpose—to house pretrial detainees as directed
19 by state law and assure court appearances (Doc. #28, Ex. D, Karowski Aff. ¶ 13).  He
20 confirms that there were 3 inmates assigned to each cell but that there was no policy in effect
21 by the county or Defendant to deliberately overcrowd the jails (id. ¶ 15).  And he explains
22 that when inmates were housed in the day room, toilets in various cells were designated for
23 use by the day room inmates (id. ¶ 9).  Defendant contends that this evidence demonstrates
24 the lack of unconstitutional conditions or deliberate indifference (Doc. #27 at 14).[5]

---

[5]Defendant also argues that Plaintiff cannot bring his claim under a "Federal Mandate," in reference to Hart v. Hill, CV 77-0479-PHX-EHC (Doc. #27 at 9-10; see Doc. #4 at 5).  The Court agrees.  With respect to any claim for monetary damages, Hart provides no independent cause of action.  This Order addresses only those claims brought under the Eighth and Fourteenth Amendments (see Screening Order, Doc. #9, recognizing only

- 6 -

1    The Court finds that Plaintiff has failed to demonstrate that overcrowding at the jail caused conditions that violated the Constitution. Standing alone, Plaintiff's claim that there are 3 men housed to a cell is insufficient to show a deprivation because triple bunking of inmates is not per se unconstitutional. Rhodes, 452 U.S. at 348. There is no evidence that crowding at the jail led to deprivations of "life necessities"—such as food, water, shelter, or clothing. Plaintiff does not present specific facts explaining the type of harm that inmates are subject to at the jail. Nor has Plaintiff shown that there exists extreme danger or violence among inmates as a result of the conditions. His allegations that he suffered "emotional problems due to lack of sleep because of noise and tension cause by overcrowding" are too general to implicate the Eighth Amendment (see Doc. #4 at 5).

Moreover, there is nothing in the record to support a finding that the crowding at the jail was arbitrary or purposeless so as to appear on its face to be punishment. Plaintiff failed to identify any evidence of an intention on the part of Defendant to punish. Defendant's effort to move inmates into new jails in 2005 to relieve overcrowding precludes any finding of deliberate indifference. Because Plaintiff has not sustained his burden in opposing the summary judgment motion, the Court will grant summary judgment for Defendant as to the overcrowding claim in Count II.

### C.    Count III—Unsanitary Conditions

Conditions that do not violate contemporary standards of decency do not transgress the Eighth Amendment. See Rhodes, 452 U.S. at 347. "[T]he Constitution does not mandate comfortable prisons." Id. at 349. But subjecting a prisoner to lack of sanitation that is severe or prolonged can constitute an infliction of pain that violates the Eighth Amendment. See Anderson v. County of Kern, 45 F.3d 1310, 1314 (9th Cir. 1995). In Anderson, the Ninth Circuit recognized circumstances that would constitute violations of the Eighth Amendment, including (1) placing a naked inmate in a lice-infected cell, serving him dirty food, and leaving his head in excrement while having a seizure, Gee v. Estes, 829 F.2d 1005, 1006

---

constitutional claims).

- 7 -

1  (10th Cir. 1987); (2) placing a naked inmate in a bare, concrete cell with excrement-
2  encrusted pit toilet and no washing facilities or hygiene products for 48 hours as punishment
3  for setting fire to his cell, McCray v. Burrell, 516 F.2d 357, 366-69 (4th Cir. 1974); and (3)
4  confining an inmate for five days in a strip cell with only a pit toilet and without a sink or
5  other washing facilities, LaReau v. MacDougall, 473 F.2d 974, 978 (2d Cir. 1972).
6  Anderson, 45 F.3d at 1314-15.  In addition, if a jail official's refusal to provide adequate
7  cleaning supplies prohibits inmates from maintaining minimally sanitary cells and thereby
8  threatens their health, there exists an Eighth Amendment violation.  See Hoptowit, 753 F.2d
9  at 784.

10  Plaintiff alleges that there were just 2 showers, 1 sink, 1 toilet, and 1 urinal for the 90-
11  100 inmates in his pod (Doc. #4 at 6).  He states that inmates were given clean clothes just
12  once a week; thus, they were forced to wash clothes in the showers and sinks (id.).  And he
13  alleges that inmates were not able to clean the phones during the day (id.).

14  Defendant points to Plaintiff's own allegations to contradict the claim that there were
15  no supplies with which to clean the phones; Plaintiff alleged in his First Amended Complaint
16  that inmates were given cleaning supplies twice a day (Doc. #27 at 15; citing to Doc. #4 at
17  6).  Karowski confirms that inmates at the Towers Jail were provided access to cleaning
18  products and equipment (Doc. #28, Ex. D, Karowski Aff. ¶ 18).  And he notes that the pods
19  were cleaned weekly by institutional crews (id. ¶ 21).  With respect to the number of
20  restroom facilities, Karowski attests that each cell at Towers contained a sink and a toilet (id.
21  ¶ 20).  On this record, Defendant has met his burden of demonstrating the absence of a
22  genuine issue of material fact as to Count III.  See Celotex, 477 U.S. at 323.

23  Plaintiff fails to show that the sanitation problems at the jail rose to the level of
24  inhumane conditions cited in Anderson, nor does he demonstrate that the unsanitary
25  conditions caused the deprivation of a human need.  In failing to respond to Defendant's
26  motion, Plaintiff did not contradict Defendant's facts or introduce any evidence, much less
27  "significant probative evidence tending to support" his claim in Count III.  Anderson, 477
28  U.S. at 249.  Therefore, the Court finds that there exists no genuine issue of material fact as

1 to Count III, and summary judgment will be granted for Defendant.

2 In light of the Court's decision to grant summary judgment to Defendant on all claims, the argument concerning *respondeat superior* need not be addressed (see Doc. #27 at 3).

4 **IT IS ORDERED** that Defendant's Motion for Summary Judgment (Doc. #27) is **granted**. The Clerk of Court must dismiss this action and enter judgment accordingly.

6 DATED this 12th day of June, 2008.

James A. Teilborg
United States District Judge